UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANNE WILSON, *Individually, and as Temporary Administrator of the Estate of James R. Wilson*,

                Plaintiff,

v.

COUNTY OF CATTARAUGUS and COUNTY OF CATTARAUGUS SHERIFF'S OFFICE,

                Defendants.

**DECISION AND ORDER**
23-CV-429S

---

## I.      INTRODUCTION

In this removed action, Plaintiff Anne Wilson alleges that the County of Cattaraugus ("the County") and the County of Cattaraugus Sheriff's Office are liable for the suicide death of her son, James R. Wilson ("Wilson"), who was an inmate at the Cattaraugus County jail. She brings claims for negligence, wrongful death, and violations of Wilson's constitutional rights.

Now pending is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.[1] (Docket No. 4.) For the reasons set forth below, the motion is granted, and Plaintiff is granted leave to replead consistent with the following decision.

---

[1] In support of their motion, Defendants filed a notice of motion, a declaration with exhibits, a memorandum of law, and a reply memorandum of law. (Docket Nos. 4, 4-1, 4-2, 4-3, 9.) Plaintiff filed a memorandum of law in opposition, as well as a declaration with exhibit. (Docket Nos. 8, 8-1, 8-2.) This Court took the motion under advisement without oral argument.

## II.     BACKGROUND

This Court assumes the truth of the factual allegations contained in the complaint.[2] See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff Anne Wilson is decedent James Wilson's mother and the administrator of his estate. Complaint, Docket No. 1-2, Exhibit C, ¶¶ 2, 4. From May 5-7, 2022, Wilson was an inmate at the Cattaraugus County jail. Id. ¶¶ 10, 12. On May 7, Wilson attempted suicide by hanging, which resulted in him entering a comatose state. Id. ¶ 13. Wilson never regained consciousness and died of his injuries on May 18, 2022. Id. ¶ 14. No other facts concerning the circumstances of Wilson's death are contained in the complaint.

Defendants owned, provided, maintained, operated, managed, and controlled the Cattaraugus County jail. Id. ¶ 7. They were also responsible for the appointment, training, and supervision of Sheriff's deputies, corrections officers, and other staff assigned to the jail. Id. ¶ 8.

Plaintiff alleges that Defendants caused Wilson's death by various acts and omissions. See id. ¶ 14a.[3] Defendants failed to receive and safely keep Wilson in their custody; failed to monitor and supervise him while he was incarcerated; and failed to properly screen and evaluate him for health, mental-health, and substance-abuse

---

[2] A copy of the complaint, which Plaintiff originally filed in state court, is included as Exhibit C to Defendants' Notice of Removal. (Docket No. 1.) The parties also included copies of the complaint in their submissions. (Docket Nos. 4-2, 8-2.)

[3] The paragraphs in the complaint are misnumbered; there are two paragraphs labeled 14. To avoid confusion, this Court delineates the second of the two paragraphs 14a.

problems. Id. Defendants further failed to prevent Wilson from harming himself by failing to place him in a detoxification unit while incarcerated; failing to adequately consider his drug addiction in establishing his supervisory needs; failing to modify his person and quarters to prevent suicide; failing to identify his suicide risk; and failing to place him on suicide watch. Id. Defendants also failed to properly hire, train, supervise, and retain the jail staff; failed to enact adequate policies, procedures, and customs to assess, monitor, and treat inmates with medical and mental-health issues; and failed to enact adequate policies, procedures, and customs to prevent inmate deaths. Id.

### III. DISCUSSION

Plaintiff asserts two causes of action. First, she alleges state-law negligence and wrongful death claims. Complaint, ¶¶ 12-15. Second, she alleges federal claims under 42 U.S.C. §§ 1983 and 1988 concerning violations of Wilson's rights under the Fifth, Eighth, and Fourteenth Amendments.[4] Id. ¶¶ 16-20. Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12 (b)(6).

At the outset, this Court notes Plaintiff's concession that each of her claims against the County of Cattaraugus Sheriff's Office must be dismissed because the Sheriff's Office, as an administrative arm of the County, is not an independently suable entity. See Memorandum of Law, Docket No. 8, pp. 2, 7. Indeed, "[b]ecause a sheriff's department 'does not exist separate and apart from the municipality and does not have its own legal

---

[4] Plaintiff also purports to bring unspecified claims under "the Constitution of the State of New York, New York State Penal Law, New York State Corrections Law, and the New York State common law." Complaint, ¶ 18. Because Plaintiff does not allege facts connecting to these sources of law, she fails to state any claims arising under them. See Broughton v. Truist Bank, 23-CV-6042 (LTS), 2024 WL 3227948, at *3 (S.D.N.Y. June 27, 2024) (finding that pro se plaintiff's unspecified claims failed because he "does not allege any facts indicating how these statutes are applicable to his claims").

identity,' it cannot sue or be sued." Forrest v. Cnty. of Greene, 676 F. Supp. 3d 69, 75 (N.D.N.Y. 2023) (quoting Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)); see also Gugino v. Erie Cnty., Case No. 1:21-cv-1319, 2024 WL 3510306, at *6 n. 4 (W.D.N.Y. July 18, 2024); Long v. Cnty. of Orleans, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Plaintiff recognizes the Sheriff's Office's status in her complaint, explicitly pleading that "the County of Cattaraugus Sheriff's Office was and is an administrative branch of the County of Cattaraugus," with no facts alleged to support a conclusion that it is an independently suable entity. Complaint, ¶ 6. All claims against the County of Cattaraugus Sheriff's Office will therefore be dismissed by agreement.

**A.      Rule 12 (b)(6) Standard**

Rule 12 (b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" also will not do. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Nor does a complaint suffice

4

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); id. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. Plausibility requires finding "more than a sheer possibility that a defendant has acted unlawfully," id., but it is not a probability requirement, Twombly, 550 U.S. at 570. The well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible." Id.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 662; id. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires the court to draw on its judicial experience and common sense. See Iqbal, 556 U.S. at 679. First, statements that are

5

not entitled to the presumption of truth, such as conclusory allegations, labels, and factually unsupported legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

**B.     Plaintiff's Causes of Action**

   **1. Negligence and Wrongful Death Claims**

The County argues that Plaintiff's state-law negligence and wrongful death claims must be dismissed because she fails to plead facts sufficient to establish a plausible claim for relief. Plaintiff maintains that her complaint adequately pleads her state-law claims.

To state a negligence claim under New York law, a plaintiff must allege that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff's injuries were caused by the defendant's breach. See Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (identifying the elements of a negligence claim in New York); Bryndle v. Boulevard Towers II, LLC, 132 F. Supp. 3d 486, 494 (W.D.N.Y. 2015) (citing Bluth v. Bias Yaakov Acad. for Girls, 999 N.Y.S.2d 840, 841 (N.Y. App. Div. 2014)); S.W. ex rel. Marquis-Abrams v. City of New York, 46 F. Supp. 3d 176, 205 (E.D.N.Y. 2014).

The County first argues that any attempt by Plaintiff to hold it vicariously liable for the allegedly negligent acts of the Sheriff's Office must fail, because the County cannot be held liable under a *respondeat superior* theory. Indeed, a county in New York "may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of *respondeat superior*, in the absence of a local law assuming such responsibility." Villar v. Cnty. of Erie, 5 N.Y.S.3d 747, 748 (N.Y. App. Div. 2015) (internal quotation marks omitted) (quoting Marashian v. City of Utica, 626 N.Y.S.2d 646, 646 (N.Y. App. Div. 1995)); Avant v. Cnty. of Erie, 20-CV-1689-LJV-HKS, 2024 WL 1856828, at *6 (W.D.N.Y. Apr. 29, 2024). Plaintiff has not alleged that the County of Cattaraugus has enacted a local law assuming *respondeat superior* liability for the acts of the Sheriff's Office nor does she identify any such law in her briefing.

Plaintiff offers no substantive response to the County's legal argument that it cannot be held liable on a *respondeat superior* theory and therefore abandons any such claims. See Malik v. City of New York, 841 F. App'x 281, 284 (2d Cir. Jan. 11, 2021) ("But when a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, especially in the case of a counseled party where a court may infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") (quotation marks and citations omitted); Guadagna v. Zucker, CV 17-3397 (SJF)(AKT), 2021 WL 11645538, at *21 (E.D.N.Y. Mar. 19, 2021); Williams v. Suffolk Cnty., 284 F. Supp. 3d 275, 284 (E.D.N.Y. 2018) (collecting cases).

Instead, Plaintiff reiterates her position that she has adequately pleaded the elements of a negligence claim. But in doing so, she focuses on the acts of the Sheriff's Office, not on the acts of the County. See Memorandum of Law, Docket No. 8, pp. 6-7 (stating that "Plaintiff's decedent's mental health and suicide risk should have been apparent to those jail officials doing a screening"). And while she also argues that the County, as the entity allegedly running the jail, knew or should have known that Wilson was prone to suicide, the complaint is devoid of any factual allegations to support the conclusion that the County—as opposed to the Sheriff's Office and jail authorities—was running the jail or knew or should have known that Wilson was a suicide risk. Id. p. 6. In short, there are no facts in Plaintiff's complaint that give rise to a plausible claim that the County was independently negligent in causing Wilson's death.

Plaintiff also fails to address the County's argument that the complaint fails to state a claim against it for negligent hiring, training, supervision, or retention. Such a claim is

based on the employer's direct negligence.  See Bouche v. City of Mount Vernon, No. 11 Civ. 5246 (SAS), 2012 WL 987592, at *9 (S.D.N.Y. Mar. 23, 2012).  "Claims for negligent hiring and retention arise from an employer 'having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee.'"  Saldana v. Port Chester, No. 09 Civ. 6268 (SCR)(GAY), 2010 WL 6117083, at *5 (S.D.N.Y. July 21, 2010) (quoting Sheila C. v. Povich, 781 N.Y.S.2d 342, 350 (N.Y. App. Div. 2004)).  Likewise, "[c]laims for negligent supervision and training arise when an employer has notice of the employee's tendency for the bad conduct and its lack of supervision or inadequate training is the proximate cause of a plaintiff's injuries."  Id.  "Thus, an essential element of a cause of action in negligent hiring, retention, supervision and training is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." Saldana, 2010 WL 6117083, at *5 (quotation marks and citation omitted); see also Moore Charitable Found. v. PJT Partners, Inc., 40 N.Y.3d 150, 157 (2023) (setting out pleading requirements for negligent supervision and retention, including that "the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm"); Waterbury v. N.Y.C. Ballet, Inc., 168 N.Y.S.3d 417, 423 (N.Y. App. Div. 2022) (setting out pleading requirements for negligent hiring and retention, including that the employer knew of its employee's harmful propensities).

Plaintiff's sparse complaint is woefully inadequate when viewed against these standards.  It contains just one allegation relating to the County's status as an employer— that the County was "responsible for the appointment, training and supervision of Sheriff's

9

Deputies, corrections officers, and other staff assigned to the Cattaraugus County Jail." Complaint, ¶ 8.  And while it alleges that Wilson's injuries and damages "were caused by the negligence, carelessness, recklessness, and/or unlawful conduct on the part of each of the defendants, and/or their agents, servants or employees," this allegation is entirely conclusory and unsupported by any factual allegations.  Id. ¶ 14a.  Beyond these deficiencies, Plaintiff alleges no facts whatsoever concerning the County's knowledge of its employees' propensities, which is fatal to her claims.[5]  See Bouche, 2012 WL 987592, at *9

Turning to Plaintiff's wrongful death claim, the necessary elements are "(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributes who suffered pecuniary loss by reason of the death of decedent[,] and (4) the appointment of a personal representative of the decedent."  Chong v. N.Y.C. Transit Auth., 441 N.Y.S.2d 24, 25-26 (N.Y. App. Div. 1981); see also Proano v. Gutman, 180 N.Y.S.3d 978, 982-83 (N.Y. App. Div. 2022) (citing Chong).  Because Plaintiff fails to state a claim that the County's wrongful act, neglect, or default caused Wilson's death, this claim fails at the second element and must also be dismissed.  See N.Y. EPTL § 5-4.1 (providing that a wrongful death claim requires "a wrongful act, neglect or default which caused the decedent's death"); Piechowicz v. Lancaster Cent. Sch. Dist., 17-CV-845V, 2022 WL 22782841, at *19 n. 13 (W.D.N.Y. Jan. 18, 2022) (Report and Recommendation) (finding that "a

---

[5] Plaintiff also alleges in her first cause of action that the Defendants failed to enact policies and procedures to prevent inmate deaths or to assess, evaluate, and monitor inmates with medical or mental-health issues. Complaint, ¶ 14a.  To the extent these allegations are directed at the County, they too are entirely conclusory and unsupported by any factual allegations.

plausible wrongful death claim requires a plausible negligence claim"), adopted by, 2022 WL 17540648 (W.D.N.Y. Dec. 8, 2022).

Accordingly, for the reasons stated above, Plaintiff's first cause of action must be dismissed for failure to state a claim upon which relief can be granted.

### 2. Constitutional Claims

The County seeks dismissal of Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims brought under 42 U.S.C. §§ 1983 and 1988 on the basis that they are insufficiently pleaded. Plaintiff contends that her complaint adequately states her federal claims.

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

As it pertains to municipalities, § 1983 imposes liability only when a municipality's official custom or policy causes an employee to violate an individual's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability cannot be premised solely on a *respondeat superior* theory, but must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]" Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Thus, a municipality will be liable for a § 1983

violation only where the municipality itself was the "moving force" behind the deprivation of a plaintiff's federal rights. See Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). That is, "a municipality will not be held liable solely because it employs a tortfeasor." Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 601 (S.D.N.Y. 2000). Consequently, "to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

Accordingly, to adequately state a claim for municipal liability, a plaintiff must plead the existence of an official policy or custom that caused the denial of a constitutional right. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). The existence of a municipal policy or custom can be demonstrated in several ways, including: (1) showing an officially promulgated and endorsed municipal policy, Monell, 436 U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decision-making evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient and widespread that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Okla. City v. Tuttle, 471 U.S. 808, 819, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), or (4) failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

When the existence of a municipal policy or custom is premised on a failure to train, the municipality's failure to train its employees must rise to the level of deliberate indifference. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

> Deliberate indifference occurs where conscious disregard is displayed for the consequences of actions, not just simple or even heightened negligence. To prove deliberate indifference, a plaintiff must demonstrate that: (1) a policymaker knows to a moral certainty that his or her employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the municipality employee will frequently cause the deprivation of a citizen's constitutional rights.

Knicrumah v. Albany City Sch. Dist., 241 F. Supp. 2d 199, 207 (N.D.N.Y. 2003) (internal quotations omitted) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)); see also Young v. Cnty. of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998). To succeed on a Monell claim, a plaintiff must ultimately show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018) (quoting City of Canton, 489 U.S. at 385).

In assessing a motion to dismiss a Monell claim, "[i]t is well settled that a plaintiff's conclusory allegations, which merely recite the elements of a Monell claim, are insufficient to state a claim for municipal liability." Bryant v. Ciminelli, 6:16-CV-06766 EAW, 2017 WL 3188988, at *3 (W.D.N.Y. July 26, 2017) (citing cases); Weaver v. City of New York, No. 13-cv-20 (CBA)(SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under Monell.") A plaintiff must allege facts tending to support, at least circumstantially, an inference that the alleged municipal policy or custom exists. Dwares, 985 F.2d at 100.

Here, Plaintiff includes no factual allegations concerning municipal liability. Nowhere does Plaintiff identify an official policy or custom that caused the denial of any of Wilson's constitutional rights. See Zahra, 48 F.3d at 685. The closest Plaintiff comes is alleging that the County failed to "enact adequate policies, procedures, customs and/or guidelines" to prevent inmate deaths or to "assess, evaluate, supervise, monitor and/or treat inmates with medical and/or mental health issues." Complaint, ¶ 14a. But these are entirely conclusory allegations devoid of any factual content. And while Plaintiff further alleges that the County failed to comply "with New York State and Federal regulations and/or prior Stipulated Settlement Agreement" and failed to comply "with generally recognized industry standards," she fails to identify any of the regulations and standards she alludes to and includes no factual allegations showing non-compliance. Id.

In short, Plaintiff fails to allege any facts giving rise to a plausible claim that the County was the "moving force" behind the denial of any of Wilson's constitutional rights. See Brown, 520 U.S. at 400. Consequently, Plaintiff fails to assert a Monell claim. See Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011) (dismissing Monell claims on the basis that the plaintiff failed to allege facts sufficient to show that a municipal policy or custom caused the alleged constitutional violations); Bryant, 2017 WL 3188988, at *4 (dismissing Monell claim because the plaintiff failed to allege facts concerning a municipal policy or custom); Houghton v. Cardone, 295 F. Supp. 2d 268, 278 (W.D.N.Y. 2003) (dismissing Monell claim on the basis that the complaint "contain[ed] only the most conclusory allegations" without "a single fact [] alleged in support of those allegations").

**C.     Leave to Amend**

Plaintiff has requested an opportunity to replead if this Court finds any of her claims subject to dismissal.  See Memorandum of Law, Docket No. 8, p. 7.  It is the usual practice to allow leave to replead upon granting a motion to dismiss.  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); Fed. R. Civ. P. 15 (a)(2) ("The court should freely give leave [to amend] when justice so requires.").  And while a district court does not abuse its discretion by denying leave to replead in the absence of such a request, see Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011), "leave to amend should be freely given unless there is 'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,'" see Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 148 n.4 (2d Cir. 2020) (quoting Foman v. Davis, 371 U.S. 178, 182-83, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)).

This Court cannot conclude at this time that the deficiencies in Plaintiff's complaint cannot be cured by further pleading or that further pleading would necessarily be futile. Leave to replead is therefore granted.

## IV.     CONCLUSION

For the reasons stated above, this Court finds that Defendants' motion to dismiss must be granted.  The complaint is dismissed as against the County of Cattaraugus

Sheriff's Office by agreement. The complaint is dismissed as against the County for failure to state a claim upon which relief can be granted, but Plaintiff is granted leave to replead.

## V.    ORDERS

IT HEREBY IS ORDERED, that Defendants' motion to dismiss (Docket No. 4) is GRANTED, consistent with the foregoing decision.

FURTHER, that all claims against the County of Cattaraugus Sheriff's Office are DISMISSED by agreement.

FURTHER, that Plaintiff is afforded leave to replead her claims against the County of Cattaraugus through the filing of an amended complaint within 14 days of the entry date of this decision.

FURTHER, that in the event Plaintiff files a timely amended complaint, the County must answer or otherwise respond to it within 28 days of the entry date of this decision.

FURTHER, that in the event Plaintiff does not file a timely amended complaint, Plaintiff's complaint is DISMISSED without further order of this Court, and the Clerk of Court is directed to CLOSE this case at the end of the 14-day time period.

SO ORDERED.


Dated:     September 3, 2024
           Buffalo, New York


                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge